Joseph A. Ponceti, the plaintiff in this case, entered into a contract with Rothschild and Bracamontes, general contractors, whereby Rothschild and Bracamontes agreed to build a five room bungalow on Venus Street in the City of New Orleans. It was stipulated in the contract that work would start "five days after priorities have been issued, also homestead loan has to be accepted and approved. This work to cost $4650.00 as per plans shown. This work to be complete six weeks from starting date". The contract was signed on April 16, 1945, and a deposit of 10% or $465 was placed in the hands of the contractors by Ponceti. Immediately thereafter Ponceti made application to the Eureka Homestead for a loan, and submitted a few days later certain plans supplied by the contractors. These plans were rejected by the homestead and the contractors so advised. Other plans were submitted which were also rejected. Plaintiff thereupon made demand for the return of his deposit, which was refused and this suit followed. It was brought against Morris Rothschild and, in the alternative, against Morris Rothschild and J.J. Bracamontes. The prayer is for $465, the amount of his deposit, plus $75 as damages and attorneys' fees, together with 5% interest from April 17, 1945.
Morris Rothschild answered averring in substance that insufficient time had been allowed him to perform his obligation under the contract, which had been arbitrarily violated by Ponceti. He reconvened seeking judgment for $1,030 less the amount of the deposit, $465 or $565.
There is a stipulation in the record to the effect that the firm of Rothschild and Bracamontes had been dissolved and its obligations assumed by Rothschild.
There was judgment below in plaintiff's favor and against Morris Rothschild in the sum of $465 with legal interest as prayed for. The reconventional demand was dismissed. Rothschild has appealed.
The contract obligated the defendant to furnish plans which would meet with the approval of the homestead in order that the plaintiff might obtain a homestead loan. Such a provision has been held to be a mixed condition. Morrison v. Mioton,163 La. 1065, 1066, 113 So. 456; Guice Co. v. Perkowski, La. App.,12 So.2d 692.
It is contended that the condition must be considered as having been fulfilled since the plaintiff has prevented the defendant from performing it because of his action in demanding a rescission of the contract. The terms of the contract obligated the contractor to begin work five days after the obtaining of priorities for building materials and the approval of the homestead and to complete the building in six weeks thereafter. Demand for the return of the deposit was made on June 1, 1945, one month and a half after the contract was signed. This is said to have been much too soon because it did not afford defendant an opportunity to discharge his obligation under the contract. It appears, however, that the plaintiff, who had been notified by the Office of Price Administration that he must vacate the premises in which he was living with his family within ninety days, employed the defendant to erect this residence in order that he might have a *Page 237 
place to move into. Two efforts were made by Rothschild to prepare plans satisfactory to the Eureka Homestead to which plaintiff had applied for a loan of $4,200. The last set was rejected by the Homestead on May 28, 1945. Plaintiff apparently concluded that after the lapse of nearly forty-two days there would be little likelihood of the house being ready when it became necessary for him to move and demanded the return of his deposit.
It appears to us that he was justified in taking the action he did, for it would seem that an experienced contractor, such as Rothschild is shown to have been, would be able to prepare plans which would meet with the approval of the homestead in two attempts. There is no contention here that the homestead acted arbitrarily, but to the contrary, there is evidence to the effect that in the consideration of the plaintiff's application, the usual procedure was employed, that is to say, the plans, when submitted, were turned over to the "Central Appraisal Bureau", which acts for all homesteads in the City of New Orleans, and that this Bureau found the plans inadequate and incomplete on both occasions.
Ponceti gave every evidence of his desire to forward the construction of the house which Rothschild agreed to build for him. He phoned Rothschild constantly in an effort to have the plans drawn in a manner satisfactory to the homestead. In fact, he became suspicious of the delay and testified that he asked Rothschild the name of the architect who was supposed to be working on the plans. He was informed that it was a Mr. Spink and that his wife phoned Mr. Spink and was advised that no plans were being prepared for his house. Spink testified to that effect. Ponceti then called on the District Attorney, with whom several conferences were had in an effort to adjust the matter.
We mention these facts to show that Ponceti showed every indication of being in a great hurry to have his house erected. The contract itself specified that the building should be erected in six weeks time. It must, therefore, have been apparent to Rothschild that time was of the essence of the contract. In view of these circumstances, it does not seem to us that Rothschild made a proper effort to satisfy the homestead in the preparation of the plans, if indeed he was able to do so. He took the stand but did not deny the statement of Ponceti or Spink, the architect.
Under the circumstances it cannot be said that proper opportunity was not afforded the defendant to comply with his undertaking.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.